## GLOWATCH v. STATE

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 9050. Decided June 25, 1928.

First Publication of This Opinion.

Syllabus by Editorial Staff.

**CRIMINAL LAW**

(190 D2) The expression of an accused that "that was a hell of an identification" made either in the presence or immediate hearing of the accuser subsequently succumbing to the injuries inflicted by the alleged accused, does not amount to a denial of such identification.

(190 E4) Although conflicting statements may have been made by one mortally wounded, at different times, the statements were admissible in order to determine what the real facts were, such question being for the determination of the jury.

(190 A9) Whether an alibi of an accused is sustained or not, is a question for the jury, the evidence being conflicting.

(190 C) Instructions to jury as to silence of accused as bearing upon his guilt or innocence, examined and held not to be erroneous.

(190 S7) Evidence examined and conclusion reached that no error was committed in failure to grant separate trials for defendants charged with same crime.

Error to Common Pleas.

Judgment affirmed.

W. J. Corrigan, Cleveland, for Glowatch.

E. C. Stanton, J. J. Sexton and M. A. Picciano, Cleveland, for State.

### STATEMENT OF FACTS.

Plaintiff in error, Glowatch, was indicted with one Gallo, for murder in the second degree, and they were tried jointly and a verdict of guilty under the indictment was found and judgment thereon pronounced by the court, and sentence proceeded accordingly.

In the early morning of January 7, 1928, one Bruno Gedwillo, was shot and in a couple of days died in a hospital from his wounds.

Just prior to noon of January 7, 1928, the police took the dying statement of the decedent and partly by reason of the information contained therein, arrested the plaintiff in error, Glowatch, together with one Charles Gallo, a co-defendant, who was tried, convicted, and upon review in this court the same was sustained and therefore he is now under sentence as co-defendant with Glowatch, for the commission of the crime of murder in the second degree.

The co-defendants, as soon after the dying statement as possible, were taken to the room in the hospital where Gedwillo was confined, and when he confronted Gallo and Glowatch, among other things he said:

"That man (pointing to Gallo) that is Gallo. That is one of the men that shot me. That is the other man that shot me (indicating Glowatch). He (indicating Gallo) struck me with the gun and (pointing to Glowatch) that is the man that shot me."

SULLIVAN, P.J.

Exception is taken by able counsel for plaintiff in error to the admission in evidence of this dying declaration, on the ground that Glowatch denied the accusation and it is claimed that under the authorities such evidence is inadmissible.

It is urged that there is evidence in the record that Glowatch, while being confronted by the decedent, did not have an opportunity to deny the accusation, because of menaces on the part of the police officers and circumstances which were of an intimidating nature, existing at the bedside of the decedent.

It is claimed also that immediately after the accusation, when the co-defendants were being led out of the bedroom that just after passing the threshold, that Glowatch denied the accusation, and that notwithstanding that he had just left the bedside of the decedent, yet he was close enough so that the denial became part of the res gestae and this being so, the admissibility of the dying declaration is error on the part of the trial court.

Upon an examination of the record we find that whatever was said by either Glowatch or Gallo immediately upon their departure from the bedroom does not amount to a denial but simply was the passing of an opinion upon the weakness of the identification by the decedent, because in substance all that was said in reference to the accusation is something to the effect that "that was a hell of an identification." This cannot be construed as a denial, and in no way does it disturb the record that under the accusation of guilt the plaintiff in error did, at the interview in the bedroom, remain silent as to the direct charge made against Glowatch at the bedside of Gedwillo that he was the man who fired the shots.

It is claimed that the court committed error again, in permitting the statement of Charles Gallo, made January 8, 1928, to be admitted because subsequently thereto, to-wit, January 16, 1928, the police officers obtained from Gallo statements which contradicted the statement of January 8th.

It is urged that the decedent and Gallo made conflicting statements as to the part which Glowatch took in the murder. That Gallo made another statement on January 16, 1928, does not make the statement of January 8th incompetent, even though there may be some conflicting statements. The two statements must be taken together and the court allowed their admissibility upon the ground that the question as to what the real facts were was to be submitted to the jury, which was done under proper instructions from the court.

From an examination of the record we think the credible evidence to support the charges of the indictment, reaches the rules required to operate in order to sustain a verdict of guilty.

It is also urged by counsel for plaintiff in error, that the testimony relating to the alibi on the part of Glowatch, is sufficient in and of itself to raise a presumption of innocence because it irresistably creates in and of itself the existence of a doubt. The jury in determining this question undoubtedly took into consideration the other testimony in the record, both positive and circumstantial, tending to show that the plaintiff in error was with Gallo at the scene of the crime, and both before and after the fatal shooting. The jury weighed this testimony and it was its province to determine wherein lay the truth. The attempt of plaintiff in error to prove an alibi was a peril

which Glowatch assumed and the consequences are usually fatal in the claim for an alibi if the contradictory testimony applying thereto annihilates or shatters it. The testimony of Fred Jones and Nick DeFranko which was proof that the plaintiff in error was at the scene of the shooting at about 2:30 A. M. undoubtedly made a strong impression upon the jury's mind against the plaintiff in error, especially when his own testimony placed him sleeping with one Cohen a long distance away.

We have carefully examined the evidence in the case and we have come to the conclusion that under the rules which govern the reviewing court we are not warranted in disturbing the verdict of the jury, on the ground that it is clearly and manifestly against the weight of the evidence.

As to the silence of the plaintiff in error under the fire of accusation of guilty, the following charge of the court relating thereto is urged as error:

"Page 670. If you find that an innocent person, under the same circumstances, would either not have denied these statements of Gallo, or not have done otherwise with respect to them, than the defendant, Glowatch, did, then all this evidence is to be wholly disregarded by you as of no consequence whatever in determining the issues of this case."

Page 671, the court there charged: "If on the other hand, in view of said circumstances, which surrounded the defendant, Glowatch, at this time and place, you find that his conduct at this time was different from what the conduct of an innocent person would have been, under the same circumstances, then you may give such weight to that fact, in determining the issues in this case, as you think it justly and fairly entitled to."

We have examined these charges and it is our judgment that there is no error therein.

We have examined the other charges of error such as the claim that separate trials should have been granted and we have come to the conclusion that there is no prejudicial error in the record below and thus holding, the judgment of the Common Pleas Court is hereby affirmed.

(Levine and Vickery, JJ., concur.)